LAZARO ALMEIDA PACHECO (CA SBN 358179)
*LPacheco@immdef.org*
IMMIGRANT DEFENDERS LAW CENTER
634 S. Spring Street, 10th Floor
Los Angeles, CA 90014
Telephone: (213) 204-9464
Facsimile: 213-282-3133

*Pro Bono* Counsel for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

Francisco Antonio Aguilar Martinez,

Petitioner,

v.

WARDEN of Adelanto ICE Processing Center; Ernesto Santacruz Jr., Director, Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement,; David J. Venturella, Acting Director, U.S. Immigration and Customs Enforcement; Markwayne Mullin, Secretary, U.S. Department of Homeland Security; Todd Blanche, Attorney General of the United States,

Respondents.

Case No. 5:26-cv-6219

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**

# INTRODUCTION

1. Petitioner Francisco Antonio Aguilar Martinez ("Petitioner"), a 32-year-old citizen of Nicaragua, petitions for a writ of habeas corpus under 28 U.S.C. § 2241. He challenges the legality of his present civil immigration detention.

2. Nearly four years ago, after Petitioner, his wife, and their young son presented themselves to federal immigration authorities at the southern border in Texas, the Department of Homeland Security ("DHS") released them into the United States on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) after finding that they were neither a flight risk nor a danger to the community. He and his family have since built a life in the Los Angeles area and complied with every reporting requirement DHS has imposed on them. Petitioner has applied for asylum, obtained work authorization, paid taxes, and supported his family as their primary breadwinner.

3. On September 17, 2026, Petitioner, his wife, and their six-year-old son voluntarily appeared for a scheduled ICE check-in at the federal building in downtown Los Angeles. Without warning or stating a reason, ICE officers arrested Petitioner. The officers did not provide a notice terminating parole, a custody decision, a warrant, a notice of alleged noncompliance, or any other written explanation. Petitioner was transported to the Adelanto ICE Processing Center thereafter, where he remains confined today.

4. Petitioner has no criminal history. Neither he nor his family have ever missed an immigration check-in or any other reporting obligation. Before or after the arrest, Respondents provided Petitioner no written notice that his parole would be terminated, no description of any reason supporting termination, no individualized determination that the purpose of parole had been served or that

humanitarian reasons and public benefit no longer warranted his freedom, and no opportunity to respond. Respondents have identified no changed circumstances, release violation, danger, or risk of flight that could possibly justify abruptly reversing their earlier decision to release him on humanitarian parole.

5. Petitioner's detention separates him from his wife and six-year-old son, who has autism and relies on Petitioner for care and support. Petitioner was the household's primary wage earner; his wife suffers from a herniated disc, arthritis, and inflammation of her airways, so she does not currently work and instead cares for their son. She is also now subject to electronic monitoring after she was inexplicably fitted with an ankle monitor during the visit where Petitioner was unlawfully detained.

6. The Constitution does not permit the Government to invite a person to comply with a scheduled check-in and then extinguish years of conditional liberty without notice, explanation, or process. Nor do the parole statute and its implementing regulation permit DHS to terminate humanitarian parole categorically or silently. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i). The Administrative Procedure Act likewise forbids agency action that is arbitrary, contrary to law, contrary to constitutional right, or in excess of statutory authority. 5 U.S.C. § 706(2)(A)-(C).

7. Petitioner therefore seeks a writ directing Respondents to release him immediately and to restore the status quo by reinstating the humanitarian parole and release conditions in effect before September 17, 2026.

## **JURISDICTION**

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. §§

2201-02 (Declaratory Judgment Act); 5 U.S.C. §§ 701-706 (Administrative Procedure Act); and 28 U.S.C. § 1331 (federal question). This Court also has jurisdiction pursuant to Art. I, § 9, cl. 2 of the United States Constitution (Suspension Clause) and the Fourth and Fifth Amendments to the U.S. Constitution.

9. Federal district courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness of their detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## VENUE

10. Petitioner lies within the jurisdiction of the United States District Court for the Central District of California because he is detained at the Adelanto ICE Processing Center in Adelanto, CA.

11. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States, a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this District, and no real property is involved in this action. 28 U.S.C. § 1391(e).

## EXHAUSTION

12. Section 2241 imposes no statutory exhaustion requirement applicable to Petitioner's challenge to his detention. Rather, exhaustion in immigration habeas proceedings is a prudential requirement subject to waiver in appropriate circumstances. *Laing v. Ashcroft*, 370 F.3d 994, 997-1000 (9th Cir. 2004). Prudential exhaustion may be excused where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000.

13. Petitioner's principal claim does not seek ordinary administrative review. Petitioner challenges ICE's decision to revoke his prior release and incarcerate him without first providing notice and a hearing before a neutral decisionmaker at which the Government bears the burden of demonstrating changed circumstances justifying his re-detention. A post-deprivation bond hearing would not provide Petitioner with the process that was due before that deprivation occurred. *See, e.g., Herman v. DHS*, No. 5:26-CV-01995-MBK, 2026 WL 1723960, at *5 (C.D. Cal. June 12, 2026) ("courts in this District have concluded that a post-deprivation bond hearing ordinarily 'is not an adequate substitute' for a pre-deprivation hearing.") (collecting cases). Neither the Executive Office of Immigration Review ("EOIR") nor the Board of Immigration Appeals ("BIA") can provide Petitioner the pre-deprivation process that ICE failed to afford him or restore the liberty he has lost due to his weeks of detention. Requiring Petitioner to remain detained while pursuing administrative alternatives such as bond would prolong the very deprivation of liberty he challenges, as he raises constitutional and legal challenges concerning the Government's failure to provide pre-deprivation process.

## **REQUIREMENTS OF 28 U.S.C. § 2243**

14. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*.

15. Habeas corpus is "perhaps the most important writ known to the constitutional law … affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The

application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

16. Petitioner FRANCISCO ANTONIO AGUILAR MARTINEZ is a citizen of Nicaragua and has resided in the United States since his entry on or around December 28, 2022. On September 17, 2026, he was detained in the downtown Los Angeles Federal Building during one of his regularly scheduled ICE check-ins. He is currently detained at Adelanto ICE Processing Center in Adelanto, CA. He has no criminal history and is pursuing asylum based on past persecution in Nicaragua and a well-founded fear of future persecution at the hands of the Nicaraguan government. If his asylum application is approved, this would give him a path to permanent residency.

17. Respondent Warden of the Adelanto ICE Processing Center, is the person with immediate physical custody of Petitioner. Respondent Warden is a legal custodian of Petitioner. They are sued in their official capacity.

18. Respondent Ernesto Santacruz Jr. is the Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations division. As such, Ernesto Santacruz Jr. is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. Ernesto Santacruz Jr. is named in his official capacity.

19. Respondent David J. Venturella is the Acting Director of U.S. Immigration and Customs Enforcement. As such, David is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. David is named in his official capacity.

20. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the INA and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

21. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity.

## STATEMENT OF FACTS

22. Petitioner FRANCISCO ANTONIO AGUILAR MARTINEZ is a 32-year-old native of Nicaragua. He and his family fled Nicaragua because they feared persecution at the hands of the Nicaraguan government due to their and their family's political opinions and opposition to the government.

23. Petitioner and his family entered the United States on or around December 28, 2022. After turning themselves over to immigration officers near the border, they were held in a shelter in Texas and released a few days later on humanitarian parole.

24. Petitioner advised officials that he and his family would settle in the Los Angeles area, so DHS arranged for them to report for check-ins there. He has lived with his family in the Los Angeles area since their release and they have complied with every reporting mechanism DHS has imposed on them.

25. Initially, DHS issued Petitioner a government cellular phone and required him to submit a photograph for weekly biometrics check-ins. Petitioner complied. When instructed, he returned the cellphone to DHS in or around February 2023,

and thereafter reported to scheduled in-person ICE check-ins at the federal building in downtown Los Angeles starting in or around March 2026.[1] He and his family have reported for in-person check-ins approximately five times this year.

26. To the best of Petitioner's knowledge and understanding, neither he nor his family have ever missed a check-in, failed to submit a required report, or violated any of their release conditions.

27. During almost four years at liberty, Petitioner lived with and supported his wife and their six-year-old son, who was diagnosed with autism when he was 3 years old. Petitioner has work authorization, pays taxes, and worked as a forklift driver at a warehouse before his detention. He was his household's primary wage earner because his wife stayed at home to care for their son due to her ailments and their son's special needs.

28. Petitioner has no criminal history in the United States or abroad. At all relevant times, he maintained stable family, employment, and community ties in this District. Before his detention, he attended church weekly near his home and is well known in his community due to his involvement with the congregation.

29. In the end of September, Petitioner's wife and son had to move from their home because Petitioner's detention deprived their family of the sole wage earner. The two are now living with relatives elsewhere in Los Angeles County.

30. Petitioner and his family submitted a Form I-589 application for asylum, withholding of removal, and protection under the convention against torture, with his wife as the principal applicant and Petitioner and their son as derivatives. Their application was based on persecution of his wife's family by the Nicaraguan

---

[1] ICE's decision to stop the weekly app check-ins suggests that ICE did not consider Petitioner a significant flight risk. Had ICE believed that Petitioner's family presented a substantial risk of absconding, it presumably would have maintained or increased, rather than reduced, the level of supervision imposed upon him.

government due to her family's political opposition to the Nicaraguan government's corruption.

31. On September 17, 2026, Petitioner, his wife, and their son appeared together at the federal building in downtown Los Angeles for a scheduled ICE check-in. Petitioner went voluntarily and precisely because he intended to comply with DHS's reporting instructions. ICE officers arrested Petitioner during the check-in. They gave him no reason for doing so, but they did state that the adjudication of their family's asylum application was taking too long. Although Petitioner was merely a derivative beneficiary of his wife's affirmative asylum application, DHS's actions ultimately resulted in his wife also being placed in removal proceedings, thereby divesting USCIS of jurisdiction over the family's pending asylum application and requiring adjudication before an Immigration Court.

32. The ICE officers provided no warrant, notice of custody determination, parole-termination notice, written accusation of noncompliance, or other document explaining the legal or factual basis for Petitioner's arrest. ICE also inexplicably fitted Petitioner's wife with an ankle monitor.

33. Before the arrest, Respondents did not notify Petitioner that they intended to terminate his humanitarian parole or detain him. They did not identify any alleged violation or changed circumstance and gave him no opportunity to submit evidence or respond.

34. After the arrest, Respondents transported Petitioner to the Adelanto ICE Processing Center. He has remained there since.

35. Respondents still have not provided Petitioner written notice terminating parole, a cogent statement of reasons, an individualized determination under 8

C.F.R. § 212.5(e)(2)(i), or an opportunity to contest the purported termination. Nor have they asserted that the purpose of parole was accomplished or that humanitarian reasons and public benefit no longer warrant Petitioner's presence in the community.

36. Petitioner's detention has separated him from his wife and young son and prevents him from working, supporting the household, and participating in the daily care of a child with autism. His wife does not work and now must manage their child's needs alone while also subject to electronic monitoring. Every day of confinement independently deprives Petitioner of physical liberty and compounds the harm to his family.

## LEGAL FRAMEWORK

### a. The Constitution Protects Noncitizens Like Petitioner from Arbitrary Arrest and Detention

37. This case concerns the unlawful revocation of Petitioner's release on parole without notice or review. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Elridge*, 424 U.S. 319, 333 (1976) (requiring notice and an opportunity to be heard before deprivation of a legally protected interest). Due process protections apply depending on the circumstances and accounts for: (1) the private interest at issue; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest. *Id*. at 334-35.

38. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from

government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Id*. at 690. Civil detention, including that of a non-citizen, violates due process in the absence of a "special justification" sufficient to outweigh one's "constitutionally protected interest in avoiding physical restraint." *Id*. (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997).

39. In *Morrissey v. Brewer*, the Supreme Court further explained how a noncitizen parolee is free to form "enduring attachments of normal life" such that their liberty "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often others." 408 U.S. 471, 482 (1972); *see also Young v. Harper*, 520 U.S. 143, 146-47 (1997) (pre-parolee's liberty interest was the same as parolees because "he was released from prison before the expiration of his sentence," "kept his own residence," "sought, obtained, and maintained a job," and "lived a life generally free of the incidents of imprisonment.").

40. Respondents revoked Petitioner's parole, arrested, and detained him without any notice, review, or opportunity to object as he reported for a routine ICE check-in with his family. Petitioner has a vital interest in his liberty which is legally protected. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (noncitizen released on humanitarian parole "has a substantial private interest in remaining out of custody. She has an interest in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church."). Indeed, once they are present in the United States, noncitizens have a "weighty" liberty interest in remaining, as they stand to lose the right "to stay and

live and work in this land of freedom," and may "lose the right to rejoin [their] immediate family, a right that ranks high among the interests of the individual." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation omitted).

41. Courts in this district and circuit have routinely found detentions like Petitioner's unlawful because DHS failed to provide them with pre-detention notice and an opportunity to be heard. *See, e.g., Colchado-Izaguirre v. Mullin*, No. 5:26-CV-03103-AYP, 2026 WL 2866319, at *1 (C.D. Cal. Sept. 23, 2026) ("This Court finds that the Due Process Clause requires that, in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the government must provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered."); *Andriasyan v. Warden*, No. 5:26-CV-01361-JAK (EX), 2026 WL 1601905, at *9 (C.D. Cal. June 1, 2026) ("courts in the Ninth Circuit have found that any post-deprivation process cannot cure the constitutional violation when the non-citizen was entitled to pre-deprivation notice and hearing."); *Domingo v. Kaiser*, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Petitioner-Plaintiff has a substantial private interest in remaining out of custody, which would allow him to care for and continue to provide for his family, and to ensure that his daughter does not suffer severe anxiety as a result of separation from her father. Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.") (cleaned up).

42. On July 8, 2025, ICE, "in coordination with" the Department of Justice, announced a new policy of immigration detention that rejected the well-established understanding of the statutory framework and reversed decades of practice where non-citizens who were paroled into the United States remained free on parole pending resolution of their immigration cases.[2] The policy changed to begin detaining people who had been previously paroled into the United States, many who had established jobs and lives in the United States, and some who live in the interior of the United States.

43. On September 5, 2025, the Board of Immigration Appeals published their judgment in *Matter of Yajure Hurtado*, 29 I&N Dec 216 (BIA 2025). This decision holds that any noncitizen present in the United States without admission or parole is an "applicant for admission" as defined in § 1225(b)(2)(A) and must be detained for the entire pendency of their removal proceedings. *Id*.

44. The Ninth Circuit has now rejected the Government's interpretation of the INA and the interpretation subsequently adopted by the BIA in *Yajure Hurtado*. In *Rodriguez Vazquez v. Bostock*, the court held that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." 183 F.4th 1160, 1165 (9th Cir. 2026). Accordingly, individuals such as Petitioner who entered without admission but were later apprehended in the interior are not subject to mandatory detention under § 1225(b)(2)(A) absent some independent basis for mandatory detention. Rather, their detention is governed by 8 U.S.C. § 1226. *Id*.

---

[2] *See* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last accessed October 20, 2026); *see also* https://www.congress.gov/crs_external_products/LSB/PDF/LSB11438/LSB11438.1.pdf (last accessed October 20, 2026).

45. *Rodriguez Vazquez* is binding on this Court and forecloses Respondents' reliance on *Matter of Yajure Hurtado* to characterize Petitioner as mandatorily detained under § 1225(b)(2)(A). Petitioner therefore remains subject to § 1226 and the constitutional and regulatory protections applicable to detention under the same. *See also Loper Bright Enters. V. Raimondo*, 603 U.S. 369, 385-86 (2024) (courts must exercise "independent judgment" when analyzing statutes and need not defer to the BIA); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Vasquez Garcia v. Noem*, No. 25-CV-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sep. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sep. 8, 2025; *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Alvarez v. Warden, Federal Detention Center Miami*, No. 25-14065 (11th Cir. 2026) (discretionary detentions provision of § applies to interior residents).

b. Respondent's Arbitrary and Illegal Revocation of Parole and Arrest <u>of Ms. Aquino Violate the Administrative Procedure Act</u>

46. Under the Administrative Procedure Act ("APA"), a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," that is "contrary to constitutional right [or] power," or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

47. Respondents' revocation of Petitioner's parole and his continued detention is arbitrary, capricious, and violates the INA and the Fifth Amendment. Respondents do not have statutory authority under 8 U.S.C. § 1225(b)(2), or any other statute, to

detain Petitioner, who was also not provided an opportunity to respond or object to the revocation of his parole. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026). Petitioner's detention is arbitrary, capricious, an abuse of discretion, violative of the Constitution, and without statutory authority in violation of 5 U.S.C. § 706(2).

48. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who were granted parole and have already entered and were residing in the United States at the time they were apprehended.

## <u>CLAIMS FOR RELIEF</u>

### COUNT 1

### Violation of Fifth Amendment Right to Substantive Due Process

49. Petitioner repeats and incorporates the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

50. The Government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. Amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas*, 533 U.S. at 690 (2001).

51. To comply with substantive due process, the government's deprivation of an individual's liberty must be justified with sufficient purpose. As such, immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring the noncitizen's appearance in their removal proceedings and preventing danger to the community. *See id*.

52. DHS's initial decision to release Petitioner on humanitarian parole necessarily reflected a determination that he did not pose a danger to the

community and was likely to appear for future proceedings. As evinced by Petitioner's clean record and his family's compliance with all requirements DHS has imposed on them, they were correct.

53. Petitioner has a fundamental interest in liberty and being free from official restraint. Petitioner's detention is untethered to any legitimate government interest, as he is in fact neither a flight risk nor a danger to his community. Furthermore, Petitioner's detention is punitive as it bears no reasonable relation to any legitimate government purpose. There has been no individualized determination that the purpose of parole had been served or that humanitarian reasons and public benefit no longer warranted his freedom. *See* 8 C.F.R. § 212.5(e)(2)(i).

54. Petitioner's detention was not supported at the time of his re-arrest by any individualized determination that circumstances had materially changed since DHS released him. There has been no material change to Petitioner's circumstances that would justify re-arrest and re-detention, so detaining him does not further any legitimate government interest. Without relief from this court, Petitioner faces the prospect of his weeks in custody turning into months. Accordingly, Petitioner is being detained in violation of his rights to substantive due process.

**COUNT 2**

**Violation of Fifth Amendment Right to Procedural Due Process**

55. Petitioner repeats and incorporates the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

56. The Due Process Clause of the Constitution "requires adequate procedural protections" prior to depriving someone of their liberty. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017); *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The absence of adequate pre-deprivation procedures creates a high risk of

erroneous liberty deprivations. *Machado v. Noem*, No. 5:26-CV-01119-MWC-AYP, 2026 WL 931138 at *3 (C.D. Cal. Apr. 3, 2026). Adequate pre-deprivation procedures include **first** holding a custody hearing in which the government must bear the burden of demonstrating, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See id.* ("Respondents contest Petitioner's request for release from detention by arguing that he should receive only a bond hearing under 8 U.S.C. § 1226(a). What Respondents fail to address, however, is that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).

57. Petitioner developed a significant liberty interest after being released from immigration custody years ago. Under the due process required by the Fifth Amendment, he was therefore owed a pre-detention hearing. *See Zinermon*, 494 U.S. at 127 ("the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property") (emphasis in original); *see also Morrissey v. Brewer*, 408 U.S. 471 (1972) (comparing release from immigration custody to liberty interest in parole).

58. As part of the liberty interest protected by the Due Process clause, Petitioner has a weighty interest in avoiding re-detention after his release years ago. *See Young v. Harper*, 520 U.S. 143, 146-47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482-83 (1972); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969-70 (N.D. Cal. 2019) (holding that a noncitizen has a protected liberty interest in remaining out of custody following an IJ's bond determination). A person who immigration authorities released from initial custody cannot be re-arrested "solely on the ground that he is subject to removal

proceedings" and without some new, intervening cause. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196 (N.D. Cal. 2017), aff'd sub nom., *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Courts have long recognized that permitting such rearrests could result in "harassment by continual rearrests." *United States v. Holmes*, 452 F.2d 249, 261 (7th Cir. 1971).

59. Petitioner's interest in his liberty and its risk of erroneous deprivation far outweighs the government's interest in detaining him after ICE originally determined he was neither a flight risk nor a danger. *See Mathews v. Elridge*, 424 U.S. 319, 330, 335 (1976). For these reasons, Petitioner's detention violates procedural due process.

60. Petitioner did not receive a pre-deprivation hearing or any type of notice prior to his re-arrest and re-detention. There was no material change in circumstances to justify re-arrest and re-detention. Petitioner materially complied with his reporting requirements, attended his immigration appointments where applicable, and does not have criminal arrests or convictions that would warrant re-detention. *See, e.g., Marina V.N. v. Robbins*, No. 25-cv-01845-KES-SKO, 2025 WL 3701960, at *4 (E.D. Cal. Dec. 21, 2025) (Petitioner had been released on parole "for nearly three years prior to her recent detention, and during that time, she worked, became engaged, and attended school. Her re-detention denies her that freedom."); *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025). Therefore, Respondents' re-detention of Petitioner without notice or a pre-detention hearing violated his right to procedural due process. Immediate release to the condition of his prior release is the appropriate habeas remedy.

//

//

**COUNT 3**
**Violation of Fourth Amendment Rights**

61. Petitioner repeats and incorporates the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

62. The Fourth Amendment protects the right of persons present in the United States to be free from unreasonable seizures by government officials.

63. As a corollary to that right, the Fourth Amendment prohibits government officials from conducting repeated arrests on the same probable cause:

> It is axiomatic that seizures have purposes. When those purposes are spent, further seizure is unreasonable . . . [T]he primary purpose of an arrest is to ensure the arrestee appears to answer charges . . . Once the arrestee appears before the court, the purpose of the initial seizure has been accomplished. Further seizure requires a court order or new cause; the original probable cause determination is no justification.

*Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020) (cleaned up); *see also Chiaverini v. City of Napoleon*, Ohio, 602 U.S. 556, 556 (2024) ("The presence of probable cause for one charge [ ] does not categorically defeat a Fourth Amendment … claim" related to another charge); *Perez Cruz v. Barr*, 926 F.3d 1128, 1143 (9th Cir. 2019) (exception to the Fourth Amendment probable cause requirement "does not extend to a preexisting plan whose central purpose is to detain, interrogate, and arrest a large number of individuals without individualized reasonable suspicion.")

64. DHS apprehended Petitioner on or around December 28, 2022, after he entered the United States, processed his information, and released him and his family on humanitarian parole with instruction to follow up and check in with

ICE on a later date in Los Angeles, where he indicated his family was headed. Petitioner at all times complied with DHS's instructions to him.

65. And then, nearly four years later, DHS seized Petitioner again based on the same underlying immigration proceedings for which it had previously arrested and released him, without any material intervening circumstances demonstrating that he had become a danger or flight risk. As such, Petitioner's re-detention is absent any material change in circumstances and therefore constitutes an unreasonable seizure in violation of the Fourth Amendment.

## COUNT 4
## Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)

66. Petitioner repeats and incorporates the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

67. Under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," that is "contrary to constitutional right [or] power," or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

68. Petitioner's detention is arbitrary, capricious, an abuse of discretion, violative of the Constitution, and without statutory authority in violation of 5 U.S.C. § 706(2).

//

//

//

//

## PRAYER FOR RELIEF

WHEREFORE, Petitioner Francisco Antonio Aguilar Martinez respectfully requests that this Court:

1) Assume jurisdiction over this matter;
2) Forthwith issue a writ of habeas corpus or an Order to Show Cause directing Respondents to show cause within three days, or within such additional time as the Court permits for good cause, why the Petition should not be granted, pursuant to 28 U.S.C. § 2243;
3) Issue a writ of habeas corpus requiring Respondents to immediately release Petitioner from custody, subject to conditions no more restrictive than those to which he was subject immediately prior to his re-detention;
4) Declare that Petitioner's re-arrest and re-detention without pre-deprivation process violated the Due Process Clause of the Fifth Amendment;
5) Declare that Petitioner is subject to the detention regime of 8 U.S.C. § 1226, rather than mandatory detention under 8 U.S.C. § 1225(b)(2)(A);
6) Enjoin Respondents from transferring Petitioner outside of the Central District of California or deporting Petitioner while this petition is pending;
7) Order that Petitioner not be re-detained by Respondents under 8 U.S.C. § 1226 absent exigent circumstances, without first providing Petitioner notice and a pre-detention hearing before a neutral arbiter at which Respondents bear the burden of establishing by clear and convincing evidence that there has been a material change in circumstances because Petitioner poses a flight risk or danger to the public;

8) Order Respondents, upon Petitioner's release, to return him to his original location of apprehension and to return all of Petitioner's documents and personal property confiscated during his arrest and processing into detention;

9) Order Respondents to file a status report within two business days after entry of the Court's order confirming Petitioner's release and compliance with the Court's order;

10) Award Petitioner reasonable attorneys' fees, expenses, and costs pursuant to the Equal Access to Justic Act, 28 U.S.C. § 2412, and any other applicable law; and

11) Grant such further relief as the Court deems just and proper.

Dated: 10/21/2026

Respectfully Submitted,

*/s/Lazaro Almeida Pacheco*
Lazaro Almeida Pacheco

*Pro Bono* Counsel for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner Francisco Antonio Aguilar Martinez and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 21st day of October 2026.

Respectfully Submitted,

*/s/ Lazaro Almeida Pacheco*
Lazaro Almeida Pacheco

*Pro Bono* Counsel for Petitioner